UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM SPRICH, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 3:14-cv-00145- PMF |
| ) | |
| THE LINCOLN NATIONAL LIFE ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

### RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS

Defense counsel fully appreciates the importance of avoiding sanctionable behavior at depositions. Indeed, the current motion is the first such motion filed against defense counsel in a 34-year legal career. Plaintiff's claim that defense counsel engaged in "deposition misconduct" during the deposition of George Rodolakis[1] is belied by the transcript of his deposition attached as Exhibit A. Defense counsel will respectfully seek to demonstrate that (1) sanctions are not warranted, and (2) the Rodolakis deposition should be deemed terminated and plaintiff's counsel should not be permitted to resume the deposition, thereby forcing defense counsel to return to Connecticut for a second round.

**1. Counsel is required to note objections on the record or they are waived.**

During the Rodolakis deposition, plaintiff's counsel falsely accused defense counsel of witness coaching and "deposition misconduct." In fact, plaintiff's counsel was seeking to bully and threaten defense counsel into simply not objecting – irrespective of whether the questions were objectionable. However, one of the duties of counsel in representing a client is to register proper objections at the time the question is asked, lest the objection be waived. *Couch v. Wal-*

---

[1] Mr. Rodolakis is a claims adjuster with Disability Insurance Specialists ("**DIS**"). Lincoln National hired DIS to administer its disability claims.

*Mart Stores, Inc.,* No. 98-4114, 1999 WL 623454, at *2 (7th Cir. Aug. 16, 1999). This does not mean that objections may be used to prevent the fair examination of the deponent. Here, defense counsel's objections did not deprive plaintiff of the fair opportunity to depose Mr. Rodolakis.

**2. Objections must be stated concisely in a non-argumentative and non-suggestive manner.**

Rule 30(c)(2) provides that objections "must be stated concisely in a non-argumentative and non-suggestive manner." As discussed in the *Abbott* case cited by plaintiff, courts are divided regarding how deposition objections are to be articulated. *The Security Nat. Bank of Sioux City, Iowa v. Abbott Laboratories,* No. C 11-4017-MWB, 2014 WL 3704277, at *5-8 (N.D. Iowa July 28, 2014). While some courts have said objections must be limited to "Objection, form" or simply the word "Objection," the district judge in *Abbott* rejected that view. *Id.* He said such objections are improper because they do not identify the legal ground for the objection. *Id.* He ruled that succinctly stated legal grounds must be stated, and warned that in his court, it would be sanctionable to object simply to "form." *Id.* at *8.

Thus, the case cited in plaintiff's motion holds that objections should be made in the very manner in which they were made by defense counsel in this case. Counsel is to say "objection" and the legal ground for the objection: "legal interpretation"; "vague"; "argumentative"; "improper hypothetical"; "compound and argumentative"; etc. Then the witness is to answer the question, as Mr. Rodolakis did in this case.

**3. Defense counsel did not engage in deposition misconduct or witness coaching.**

The *Abbott* case does not support the imposition of sanctions in this case. In *Abbott,* the court sanctioned an attorney for his "unnecessary and unwarranted" objections and interruptions. *Id.* at *14-15. The sanctioned attorney made 115 "form" objections in a deposition, most of which completely lacked merit and some of which were made without stating a particular basis for the objection. *Id.* at *4-5. By contrast, defense counsel here made eight legitimate "form"

objections during Mr. Rodolakis's deposition and stated the particular basis (such as speculation, assumes facts not in evidence, etc.) each time.[2]

The sanctioned attorney in *Abbott* also made commentary throughout the depositions that had the effect of coaching the witnesses to give particular answers and interposed "many unnecessary comments, clarifications, and objections" that "impeded, delayed, and frustrated the fair examination of witnesses . . . ." *Id.* at *14. No such witness coaching or unnecessary interruptions or objections occurred during the deposition of Mr. Rodolakis. Rather, in light of plaintiff's counsel's aggressive demands that the witness speculate, assume facts not in evidence, and misconstrue documents, the legal objections made by defense counsel were appropriate and necessary.

**4. Defense counsel's objections were legally valid.**

Defense counsel endeavored in good faith to object only to questions that were legally defective and therefore appropriately subject to objection. In fact, he forwent objecting to many objectionable questions. He also shortened his objections ("Same objection") where the context permitted, and thereby went out of his way <u>not</u> to impede the flow of questioning by plaintiff's counsel.

Defense counsel's objections will be ruled upon in the event plaintiff attempts to offer the deposition testimony at trial. Defense counsel did not articulate in the deposition his entire position with regard to the objectionability of the questions asked. Doing so during the deposition would constitute an inappropriate oppression of plaintiff's counsel's right to ask questions. Nevertheless, defense counsel can elaborate upon and justify as legally valid every

---

[2] Exhibit A (Rodolakis Deposition) at 83:4-9; 84:4-7; 85:17-20; 90:3-6; 91:14-18; 97:6-8; 99:10-15; 100:14-16.

3

objection made during the Rodolakis deposition, and would do so at trial if called upon to do so. The questions objected to were legally objectionable.

**5.  Plaintiff's counsel was guilty of bad behavior in the Rodolakis deposition.**

The Rodolakis deposition transcript demonstrates that plaintiff's counsel himself engaged in inappropriate and unprofessional behavior.  He attempted to bully, bait and berate not only the witness, but also opposing counsel ("I tend not to hang out with people like you.") (Exhibit A (Rodolakis Deposition) at 9:9-10) ("Thank you, Judge Cole") (Exhibit A (Rodolakis Deposition) at 42:23), along with his frequent false accusations that the making of objections constituted "deposition misconduct" and "witness coaching."  Exhibit A (Rodolakis Deposition) at 62:15-18; 65:22-24; 68:7-8; 69:23-24; 71:16-17; 76:3-4; 79:7-8; 81:24-25; 84:8-10; 85:21-22; 90:7; 99:16-18; 99:24-100:2; 100:17-19.

Plaintiff's counsel incessantly asked Mr. Rodolakis about matters that have nothing to do with this case, attempted to harass him into agreeing that various documents say things other than what they actually say, and bullied the witness about his inability to give testimony based on hypothetical questions involving facts not present in this case.  After these inappropriate questions, defense counsel stated succinct and appropriate legal objections and allowed the witness to answer subject to his objections.  In response, plaintiff's counsel accused defense counsel of deposition misconduct and witness coaching.  These accusations are simply not supported by the deposition transcript.

Plaintiff's counsel started the deposition with a fight after the witness refused to give his home address.  Mr. Rodolakis testified that he has been involved in situations in which other claimants have threatened his personal safety.  Out of those concerns, Mr. Rodolakis said, he does not give out his home address.  Although he reluctantly agreed to give plaintiff's counsel

4

the name of his street and the city in which he lives, Mr. Rodolakis refused to provide his street number because of his security concerns.

Unhappy with the witness's position on providing his street number (which is entirely irrelevant to this case), plaintiff's counsel then asked Mr. Rodolakis about the details of the unrelated claims that involved the threats to his safety. Mr. Rodolakis indicated he could not answer those questions because his company's policy forbids him from discussing a claim with someone other than the insured or the insured's representative. Mr. Rodolakis also believed state and federal laws prohibit disclosure of this information. Unhappy with the witness's position, plaintiff's counsel abruptly announced that the "deposition is over" less than fifteen minutes after it started and tried to call Judge Frazier to force the witness to answer.

Although plaintiff's counsel continued with the deposition when he could not reach Judge Frazier, his misconduct did not stop. Rather, he repeatedly attempted to bully the witness to admit that various documents say things that they do not, and repeatedly asked improper hypothetical questions of the lay witness based on facts not involved in this case.

For example, after examining plaintiff's shoulder on one occasion, Dr. George Paletta issued a report that states: "In my opinion, his best option is likely to consider modification of his practice and elimination of heavy neurosurgical aspects such as spinal and cranial surgery." During the Rodolakis deposition, plaintiff's counsel repeatedly tried to get the witness to agree that in Dr. Paletta's opinion, plaintiff is <u>incapable</u> of performing spine or cranial surgery. Mr. Rodolakis refused to agree with plaintiff's counsel because Dr. Paletta never said that plaintiff is <u>incapable</u> of these surgeries; rather, Dr. Paletta opined that Plaintiff's "<u>best option is likely to consider . . . elimination</u>" of these surgeries. Unhappy with the witness's answer, plaintiff's counsel repeatedly demanded Mr. Rodolakis agree with a statement that is not supported by Dr.

5

Paletta's report. In response to these repetitious and argumentative questions that misrepresented Dr. Paletta's report, defense counsel stated his legal objection and allowed the witness to answer subject to his objection.

Similarly, plaintiff's counsel instructed the witness to assume that Dr. Paletta's report said "I don't believe he can perform spine or cranial surgery," which it did not, and to opine as to whether Mr. Rodolakis would have denied plaintiff's claim in that situation. In response, defense counsel stated the basis for his objection and allowed the witness to answer. Mr. Rodolakis answered by saying that he could not opine as to what he would have done in that situation because it would require him to speculate.

Those types of exchanges occurred repeatedly as plaintiff's counsel continued to ask the same questions in an effort to bully Mr. Rodolakis into giving him the answer plaintiff's counsel wanted. When he was unable to force the witness into changing his testimony, plaintiff's counsel announced "That's it, I quit" and terminated the deposition.

### **6. Plaintiff's counsel's previous conduct in this case was egregious and should be considered.**

The district judge in the *Abbott* case relied upon by plaintiff specifically cited offensive conduct from other depositions in the same case as pertinent to the question of sanctions. *Abbott*, 2014 WL 3704277, at *14. Defendant respectfully submits that the instant motion should likewise not be viewed in a vacuum. The conduct of plaintiff's counsel in previous proceedings in this case should also be considered.

For example, as the Court knows, plaintiff's counsel improperly sent an **August 13 email** directly to the Court, complaining of alleged discovery violations by defendant. Defendant was forced to respond with an email of its own, which demonstrated unequivocally that each and every accusation made by plaintiff's counsel was false; indeed, plaintiff's counsel himself had in

6

fact repeatedly violated the rules of discovery and this Court's Scheduling and Discovery Order. Plaintiff's counsel responded August 14 with another email, sent, again, directly to the Court. Therein, without apology to the Court or defense counsel, plaintiff's counsel replied with characteristic arrogance: "My bad."

Plaintiff's request for sanctions is ironic and hypocritical in light of plaintiff's counsel's appalling behavior during **plaintiff Sprich's deposition,** taken by defendant July 24. In that deposition, plaintiff's counsel commented on his own "dope consumption" and offered defendant's counsel speed. On two occasions, plaintiff's counsel urinated off a deck connected to the office in which the deposition was being held. Plaintiff's counsel was in plain view -- via a sliding glass door -- of the deposition attendees, two of whom were women. Plaintiff's counsel then proceeded to make numerous comments about urinating while on the record and even encouraged his client to urinate off the deck.

In addition to these offensive comments and vulgar behavior, plaintiff's counsel interrupted defendant's counsel's questioning of plaintiff throughout the deposition by interjecting inappropriate comments and coaching. Plaintiff's counsel also repeatedly instructed the witness not to answer appropriate and relevant questions. Illustrative excerpts that highlight plaintiff's counsel's misbehavior, and the full Sprich deposition transcript are attached hereto as Exhibits B and C.

**7. Instructions not to answer should be considered in context.**

Defense counsel acknowledges that under amended Rule 30, circumstances justifying instructions to a witness not to answer are limited. Here, in one instance, defense counsel instructed his client not to answer on the basis of attorney-client privilege. Exhibit A (Rodolakis Deposition) at 42:6-22. That instruction was proper under Rule 30.

In one other situation, as discussed above, plaintiff's counsel repeatedly sought to force Mr. Rodolakis to testify about other claims handled by Mr. Rodolakis. Mr. Rodolakis indicated he believed his company policy, as well as federal and state law required he maintain confidentiality with regard to unrelated other claims. After plaintiff's counsel persisted, defense counsel politely indicated he would have to instruct the witness not to answer unless counsel could offer an explanation of relevance to the instant claim that might overcome the confidentiality concern. Exhibit A (Rodolakis Deposition) at 12:24-13:14. It was at this point that plaintiff's counsel abruptly declared the deposition was "over," and proceeded to contact Judge Frazier's office. Exhibit A (Rodolakis Deposition) at 14:10-16:22. When this effort was unsuccessful, defense counsel expressly stated that plaintiff's counsel could ask Mr. Rodolakis again, and the deposition proceeded. Exhibit A (Rodolakis Deposition) at 16:23-19:9.

While Rule 30(d)(3)(A) seems to call for termination of the deposition rather than instructing the witness not to answer, defense counsel asks the Court to consider the practical circumstances of this situation as well as the context. First, plaintiff's counsel refused to explain the relevance of the witness's handling of the other claims giving rise to threats against his personal safety. Exhibit A (Rodolakis Deposition) at 12:24-13:14. A good faith explanation by plaintiff's counsel might have led to a different outcome. Moreover, defense counsel had been required to travel to Connecticut for the deposition of his witness; requiring defense counsel to terminate the deposition to apply for relief from the Court as to this irrelevant line of questioning seems highly impractical. In any event, this issue was later obviated altogether when defense counsel expressly advised plaintiff's counsel he could inquire again on this subject. Exhibit A (Rodolakis Deposition) at 18:17-19:9.

In short, defense counsel asks the Court to consider not only the practical circumstances of this deposition but also the larger context. As defendant has demonstrated, plaintiff's counsel's conduct previously in this litigation, including during the Sprich deposition, was grossly improper. It is respectfully submitted that defense counsel's good faith efforts to represent Mr. Rodolakis in his deposition should, under the circumstances, be considered in light of this larger context.

**8. Conclusion.**

Defense counsel deems his position as an Officer of the Court to be a solemn obligation. This first-ever "Motion for Sanctions" advances a serious and troubling accusation against defense counsel, without substantiating the accusation. Defendant submits that the instant motion is without merit. Defendant respectfully requests that the motion be denied, and, if appropriate, an order terminating the Rodolakis deposition be entered or leave granted to defendant to file a motion for termination under Rule 30(d)(3)(A).

Respectfully submitted,

ARMSTRONG TEASDALE LLP

BY: */s/ Sara Finan Melly*
    Clark H. Cole    #03129311
    Sara Finan Melly    #6288142
    7700 Forsyth Blvd., Suite 1800
    St. Louis, Missouri 63105-1847
    (314) 621-5070
    (314) 621-5065 (facsimile)
    ccole@armstrongteasdale.com
    melly@armstrongteasdale.com

ATTORNEYS FOR DEFENDANT THE LINCOLN NATIONAL LIFE INSURANCE COMPANY

## **CERTIFICATE OF SERVICE**

      I hereby certify that on September 3, 2014, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following: Thomas Q. Keefe, Jr., Keefe & Keefe, P.C., #6 Executive Woods Court, Belleville, IL 62226, *Attorney for Plaintiff*.

                                          */s/ Sara Finan Melly*